UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. CR411-061 |
| ) | |
| THOMAS JEROME JOHNSON ) | |

## REPORT AND RECOMMENDATION

Thomas Jerome Johnson moves this Court to suppress the government's evidence against him and to dismiss his gun-possession indictment[1] outright. Docs. 16 & 17. Both motions should be denied.

## I. BACKGROUND

Late one November night in 2010, police officer James Williams III, as part of a proactive crime-prevention unit, was patrolling a known high-crime area of Savannah, Georgia with about ten other officers in an unmarked van. These officers spotted some men playing cards on top of a garbage can on a city street, directly in front of a house known by the police for its drug activity. Suspecting that an illegal gambling game was in progress, the officers elected to stop their vehicle and investigate.

---

[1] He is charged with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). Doc. 1.

When the squad of officers exited the van, a command to "Stop! Don't Move!" -- or words to that effect -- was issued by one of the officers. Johnson, who was not playing cards, stood about 2-3 yards away from the garbage can, next to another man. When Officer Williams approached the two men, he suspected that they were engaged in a drug transaction, given their behavior and the reputation of the home behind them.

Officer Williams, who had his police insignia (but not his weapon) displayed, asked the two men their names and whether they lived in the area. When Williams inquired whether Johnson had any weapons on his person, Johnson immediately said "yes, I have a gun." He did not say where, and only then did the officer place his hands on Johnson.[2] Officer Williams then escorted Johnson over to the van and alerted his colleagues. He found a gun in Johnson's right back pocket.

The entire encounter took about thirty seconds. Officer Williams was not sure whether Johnson was in range of the aforementioned "Stop!" command. He did testify, however, that if Johnson had attempted to walk or run away, he would have stopped him. At the

---

[2] The Court thus credits Williams' testimony over Johnson's "affidavit account" to the contrary (where he says Williams "came to me, and placed his hand on my left arm and asked me a question, and I said I have a Pistol in my back pocket," doc. 29 at 2 ¶ 10).

2

suppression hearing the government conceded that if Johnson felt he could not leave then he in fact was "seized." But even assuming there was a seizure, the government contended that "the reasonable suspicion" umbrella covered Johnson, so under *Terry v. Ohio*, 392 U.S. 1 (1968), the encounter did not violate Johnson's Fourth Amendment rights.

## II. ANALYSIS

The Eleventh Circuit has "categorized encounters between police and citizens into three types, with varying levels of Fourth Amendment scrutiny: '(1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests.' *United States v. Perez*, 443 F.3d 772, 777 (11th Cir. 2006)." *United States v. Jordan*, 635 F.3d 1181, 2011 WL 891075 at * 1 (11th Cir. Mar. 16, 2011). A consensual encounter does not implicate the Fourth Amendment, but the burden is on the government to prove that it was consensual. *Id.*; *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *United States v. Berry*, 670 F.2d 583, 591, 594 (5th Cir. Unit B 1982) (en banc).

Given the government's concession, the Court will assume that Johnson's encounter was not consensual and thus move on to level (2), which involves the classic *Terry* stop. Under *Terry*, "the requisite level of

suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. And thus it will suffice that there exists at the time of the stop a substantial possibility -- or, indeed, even a moderate chance -- that criminal conduct has occurred, is occurring, or is about to occur." 4 WAYNE R. LaFAVE, SEARCH & SEIZURE § 9.5 (4th ed. 2010) (quotes and footnotes omitted); *Jordan*, 2011 WL 891075 at * 2 ("the Fourth Amendment does not prohibit a police officer, in appropriate circumstances and in an appropriate manner [from] approach[ing] a person for purposes of investigating *possibly* criminal behavior even though there is no probable cause to make an arrest, *Terry*, 392 U.S. at 22, 88 S. Ct. 1868. That is, law enforcement officers may seize a suspect for a brief, investigatory *Terry* stop where (1) the officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the stop was reasonably related in scope to the circumstances which justified the interference in the first place. *Id.* at 19–20, 30, 88 S. Ct. 1868.") (quotes omitted; emphasis added).

Johnson's presence, within just a few yards of suspected illegal gambling in a high-crime neighborhood *and* in front of a known drug

house, justified the officer's brief investigatory seizure to inquire into his reasonable suspicion that Johnson was engaged in some form of criminality. And it was during that inquiry that Johnson, who claims no coercion, volunteered that he in fact possessed a gun. Because those facts comfortably support the *Terry* level of suspicion required to briefly detain and question Johnson, his suppression motion must be denied. *See, e.g. Jordan*, 2011 WL 891075 at * 3.

Johnson's motion to dismiss his indictment is entirely baseless. Invoking this Court's supervisory power, *United States v. Williams*, 504 U.S. 36, 46 (1992), he complains that even though the government presented ample evidence on which the grand jury could indict him for gun possession -- the *only* charge at issue here -- it "misled" the grand jury about *collateral* matter, and this misstatement warrants dismissal of the entire prosecution against him:

> Here, the Grand Jury was led to believe, did believe, relied upon, and considered the falsehood as a fact, that Defendant was with the group of the men playing cards on top of a garbage can on the side of the Street at close to 11:00 o'clock at night. (Grand Jury Transcript, p6, L8-L9, & p7, L1-L2).

Evidently, a Grand Juror was concerned about the stop:

Juror: "Do you know anything else about this particular area that the stop occurred?" Answer: "I only know that next door to where

5

*they were playing* was an abandoned house." (Emphasis added).

> Defendant contends that he was prejudice[d] by the government's misrepresentation of the fact to the Grand Jury misleading the Grand Jury to believe that he was playing card[s] on top of a garbage can at 11:00 o'clock at night. *United States v. Kouba*, [822 F.2d 768] (8th Cir. 1987).

Doc. 16 at 2-3. Defendant's contention seems to be that the grand jury may have been tainted by the false assertion that Johnson was playing cards (hence, gambling), and this tainting (but false) assertion tipped them into indicting him for the gun possession charge, while they otherwise would not have done so.

Of course, that comes nowhere close to the showing of false or otherwise misleading testimony required to support judicial relief:

> To make out a claim of prosecutorial misconduct regarding the use of false testimony [before the grand jury], a defendant must establish that the prosecutor "knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was *material*." *United States v. Woodruff*, 296 F.3d 1041, 1043 n. 1 (11th Cir. 2002).

*United States v. Akel*, 337 F. App'x 843, 858 (11th Cir. 2009) (emphasis added); *see also United States v. Williams*, 146 F. App'x 425, 432 (11th Cir. 2005) (no misconduct by failing to present exculpatory evidence to the grand jury). Even assuming some falsity flowed into the grand jury

6

proceedings here, nothing material has been shown. At worst a police witness insinuated that Johnson illegally gambled, but it is ludicrous to insist that this impermissibly biased the grand jury into finding probable cause to believe he possessed a gun, especially since he *admitted* doing so.[3] Nor has Johnson come close to demonstrating that the prosecutor was personally aware that the testifying agent's testimony before the grand jury was false or misleading.

## III. CONCLUSION

Accordingly, defendant Thomas J. Johnson's motions to suppress and dismiss (docs. 16 & 17) should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this  19th  day of April, 2011.

*/s/ G.R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA

---

[3] For that matter, a subsequent trial resulting in a guilty verdict typically washes away such sins. *See, e.g., United States v. Bowie*, 618 F.3d 802, 818 (8th Cir. 2010) (even if there was an error at the grand jury level in obtaining the indictment, any error was harmless because the district court found following subsequent bench trial that there was sufficient evidence to convict defendant beyond a reasonable doubt) (citing *Kouba*, 822 F.2d at 774).